| | |
|---|---|
| LORANDA VEIS, and MEFAIL SERIFOSKI, <br><br> Plaintiffs, <br><br> v. <br><br> MALM & LAFAVE, S.C., and SWEENEY WELL DRILLING & PUMPS, INC., <br><br> Defendants. | Case No.: 20-cv-1604 <br><br><br> **CLASS ACTION COMPLAINT** <br><br><br> **Jury Trial Demanded** |

## INTRODUCTION

1. This action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by Plaintiffs pursuant to 15 U.S.C. § 1692k, and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendants directed their collection efforts into the District.

## PARTIES

3. Plaintiff Loranda Veis is an individual who resides in Milwaukee County, Wisconsin.

4. Plaintiff Mefail Serifoski is an individual who resides in Milwaukee County, Wisconsin.

5. Each Plaintiff is a "customer" as used in the WCA, 421.301(17), in that Plaintiff obtained services from Defendant for personal, family, or household purposes.

6. Defendant Sweeney Well Drilling and Pumps, Inc. ("Sweeney") is a Wisconsin corporation with its principal place of business located at 11221 W. Saint Martins Rd., Franklin, WI 53132-2331.

7. As its name suggests, Sweeney provides well drilling, water pumping and related services to Wisconsin residents. Sweeney's website states:

> Sweeney Well Drilling & Pumps Inc. has been in the water well industry for over 60 years. We specialize in both commercial and residential projects. We can repair or replace your current water pump system.

https://www.sweeneywelldrillingandpumpsinc.com/well-pump-installation-repair-services.

8. Sweeney is a "merchant," and "debt collector" as those terms are defined in the WCA. Wis. Stat §§ 421.201 and 427.103.

9. Defendant Malm & LaFave, S.C. ("Malm") is a law firm with its principal place of business located at 7177 N. Port Washington Rd. # 210, Milwaukee, WI 53217-3884.

10. Malm represented Sweeney in legal proceedings against Plaintiffs, including filing and dismissing a lawsuit against Plaintiff Serifoski and filing and failing to withdraw an improper construction lien, as described below.

11. Malm is a "debt collector" as that term is defined in the WCA. Wis. Stat § 427.103.

## FACTS

12. On or around October 9, 2017, Plaintiffs and Sweeney entered into an agreement for the installation of a well and pump on Plaintiffs' property.

13. The well was purchased for personal, family, and household purposes – water service at Plaintiffs' home.

14. The agreement was a "consumer transaction" as that term is defined in the WCA. Wis. Stat. § 421.301.

15. Plaintiffs agreed to pay a total of $2,177.91 to Sweeney for the well and pump installation.

16. Sweeney did not impose any interest on Plaintiffs' account by mutual assent. The Plaintiffs' understanding was that the Plaintiffs would pay down the balance interest-free until it was paid.

17. Plaintiffs did make a payment to Sweeney of $200.00 on or around March 26, 2018. At that point, the balance due was $1,927.91.

18. On or around April 6, 2018, Sweeney, by its attorney Malm, filed a construction lien against Plaintiffs' home, claiming a total of "$2,177.91 plus costs." A copy of the "Prime Contractor Claim for Lien" filed in Milwaukee County Circuit Court, is attached as Exhibit A.

19. The amount of the construction lien was incorrect on the date Defendants filed it. On that date, Plaintiffs actually owed $1,977.91, as they had made a $200 payment in March and Sweeney was not adding interest to the account.

20. The construction lien was entered on the court's docket as "$21,779.91", approximately ten times greater than the original (albeit incorrect) amount of the lien. Plaintiffs were not aware of the lien, the incorrect lien amount, or the extra "9" added to the incorrect lien amount, until approximately two years later.

21. In March 2018 through January 2019, Plaintiffs made several payments to Sweeney. A copy of a statement provided by Sweeney on or around April 17, 2019 is attached as Exhibit B.

22. Exhibit B indicates that the total amount Plaintiffs agreed to pay Sweeney for the well was $2,177.91.

3

23. Exhibit B indicates the balance of the Plaintiffs' account as of April 17, 2019 was $1,227.91, due to Plaintiffs having made $950.00 of payments toward the balance between March 2018 and January 2019.

24. On or around May 15, 2019, Plaintiffs paid Sweeney $250.00 by check.

25. On or around October 29, 2019, Plaintiffs paid Sweeney $200.00 by check.

26. On or around March 21, 2020, Plaintiffs paid Sweeney $200.00 by check. At this point, the remaining balance on Plaintiffs' account was $577.91.

27. On April 3, 2020, Sweeney, by its attorneys Malm, filed a lawsuit against Plaintiff Serifoski, seeking to enforce the construction lien. *Sweeney Well Drilling & Pumps, Inc. vs. Mesaio Serioski* [*sic*] *et al.*, Case No. 2020CV002465 (Milw. Cty. Cir. Ct.). A copy of the summons and complaint and exhibits is attached as Exhibit C. The April 3, 2020 lawsuit did not include Plaintiff Veis as a defendant.

28. Exhibit C stated that the balance on the account as of April 3, 2020 was $2,177.91. This amount was false. The amount stated was the original amount due for services provided and did not account for the payments Plaintiffs had made through March 2020. At the time the lawsuit was filed, the remaining balance on Plaintiff's account was $577.91.

29. Malm should have known at the time of filing that the April 3, 2020 lawsuit attempted to collect a wrong and inflated amount. The supporting documents filed with the lawsuit do not include Exhibit B or any indication that Plaintiffs had made payments over time.

30. In late May or early June 2020, Plaintiff Veis paid the amount that Sweeney had represented to Plaintiff Veis to be the remaining balance of $760.00, due to the addition of a $170.00 "lawyer fee" to the balance.

4

31. Upon information and belief, the $170 "lawyer fee" was the filing fee for the April 3, 2020 lawsuit, rounded down by $1.00.

32. No provision of the agreement between Plaintiffs and Sweeney or provision of Wisconsin law permitted Sweeney or Malm to charge a $170.00 "lawyer fee," or to charge Plaintiffs for the filing of the April 3, 2020 lawsuit. *See Seeger v. Afni, Inc.*, 548 F.3d 1107, 1111 (7th Cir. 2008) ("In order to be entitled to collect a fee, AFNI must show that the fee is either authorized by the governing contract or that it is permitted by Wisconsin law."); *Veach v. Sheeks*, 316 F.3d 690, 692-93 (7th Cir. 2003) (representing that amounts that may be awarded by a court are not part of the "amount of the debt" until and unless the court actually awards them).

33. On June 1, 2020, Plaintiff paid $760.00 by check. This payment satisfied the full remaining balance on the account and overpaid by $182.09. In fact, even if the lawyer fee were permitted by agreement or law, which it is not, Plaintiff overpaid by $12.09.

34. Defendants dismissed the April 3, 2020 lawsuit on June 11, 2020.

35. Despite Plaintiffs' payment in full, overpayment, and Defendants' dismissal of the April 3, 2020 lawsuit, Defendants did not release the construction lien on Plaintiffs' property.

36. As of the date of filing of the action, Wisconsin Circuit Court Access ("CCAP") docket for the construction lien filing still indicates the lien has not been satisfied. *See* https://wcca.wicourts.gov/caseDetail.html?caseNo=2018CL000051&countyNo=40&index=0.

37. On or around July 23, 2020, Plaintiffs applied for a consumer installment loan from Tri City National Bank ("Tri City") to refinance their automobile.

38. On or around July 30, 2020, each Plaintiff received an "Adverse Action Notice" from Tri City, informing Plaintiffs that Tri City had denied their loan application. Copies of the Adverse Action Notices are attached together as Exhibit D.

5

39. The Adverse Action Notices each stated that the single reason for denial was "Collection action or judgment." Exhibit D. At the time Tri City obtained credit reports for Plaintiffs, the April 3, 2020 lawsuit had been dismissed for several weeks. Upon information and belief, "Collection action or judgment" means the construction lien. Exhibit A.

40. Exhibit D states that Tri City's decision was based in part on credit reports obtained from "Factual Data," a credit reporting agency located in Loveland, Colorado.

41. Exhibit D states that Tri City's decision was based in part on Plaintiffs' TransUnion credit scores.

42. An employee of Tri City told Plaintiffs that their loan was denied due to the $21,779.91 construction lien, which amount exceeded the amount owed on Plaintiff's automobile.

43. Plaintiffs have been injured by Defendants' conduct. Upon information and belief, Tri City denied Plaintiffs' loan application due to the $21,779.91 construction lien that Defendants had placed on the property and not released upon Plaintiffs' full repayment of the balance.

### *The FDCPA*

44. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp. Solutions*, 2018 U.S. Dist. LEXIS 50016, *12, 2018 WL 1513043 (E.D. Wis. March 27, 2018); *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under

6

the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lanev. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also, Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

45. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection

7

practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

46. Misrepresentations of the character, amount or legal status of any debt, including language confusing or obscuring purported settlement offers, injure or risk injury to interests expressly protected by Congress in the FDCPA. *See Degroot v. Client Servs.,* 2020 U.S. Dist. LEXIS 6677 (E.D. Wis. Jan. 15, 2020) ("[A]n informational injury can be concrete when the plaintiff is entitled to receive and review substantive information."); *Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Mgmt., Inc.*, 18-cv-1484 (E.D. Wis. August 9, 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

47. 15 U.S.C. § 1692e generally prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

48. 15 U.S.C. § 1692e(2)(a) specifically prohibits the "false representation of the character, amount, or legal status."

49. 15 U.S.C. § 1692e(5) specifically prohibits threatening "to take any action that cannot legally be taken or that is not intended to be taken."

8

50. 15 U.S.C. § 1692e(8) specifically prohibits: "Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

51. 15 U.S.C. § 1692e(10) specifically prohibits "the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

52. 15 U.S.C. § 1692f generally prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

53. 15 U.S.C. § 1692f(1) specifically prohibits: "The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

### *The WCA*

54. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

55. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

56. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

57. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l*

9

*Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

58. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

59. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1).

60. The Act provides injured consumers with causes of action for declaratory and injunctive remedies, as well as statutory, actual, and punitive damages remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e).

61. The Act provides that consumers may bring individual or class actions to seek permanent or temporary injunctive relief from false, misleading, deceptive, or unconscionable practices in connection with the making, inducement, or enforcement of consumer credit transactions. Wis. Stats. §§ 426.109(1), 426.110(2).

62. Moreover, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

63. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

## COUNT I – FDCPA

64. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

65. Count I is brought against Defendant Malm.

66. The complaint in the April 3, 2020 lawsuit, drafted, signed and filed by an attorney at Malm, falsely states the amount of the debt.

67. The complaint in the April 3, 2020 lawsuit overstated the amount due and failed to credit the payments that Plaintiffs had made on the account.

68. Defendant Malm violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(5), 1692e(8), 1692e(10), 1692f, and 1692f(1).

## COUNT II – FDCPA

69. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

70. Count II is brought against Defendant Malm.

71. After dismissal of the April 3, 2020 lawsuit, Malm failed to release the construction lien on Plaintiffs' property.

72. As a result of Malm's failure to release the construction lien, Plaintiffs were denied credit with Tri City.

73. Defendant Malm violated 15 U.S.C. § 1692f.

## COUNT III -- WCA

74. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

75. Count III is brought against both Defendants.

76. Defendants demanded a "lawyer fee" of $170.00 in order to dismiss the April 3, 2020 action.

77. Plaintiffs paid the additional $170.00 "lawyer fee."

78. The $170.00 "lawyer fee" was actually the filing fee for the April 3, 2020 lawsuit, rounded down by $1.00.

79. Defendants were not entitled to recover the filing fee unless and until that amount had been taxed by the court as costs after judgment.

80. No judgment was entered in the April 3, 2020 action. Defendants voluntarily dismissed the action and did not seek an award of costs from the court. *See Seeger*, 548 F.3d at 1111; *Veach v. Sheeks*, 316 F.3d at 692-93.

81. Defendant violated Wis. Stat. § 427.104(1)(j).

## COUNT IV -- WCA

82. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

83. Count IV is brought against both Defendants.

84. The complaint in the April 3, 2020 lawsuit falsely states the amount of the debt.

85. The complaint in the April 3, 2020 lawsuit overstated the amount due and failed to credit the payments that Plaintiffs had made on the account.

86. Defendants violated Wis. Stat. § 427.104(1)(j).

## COUNT V -- WCA

87. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

88. Count V is brought against both Defendants.

89. After dismissal of the April 3, 2020 lawsuit, Defendants failed to release the construction lien on Plaintiffs' property.

90. As a result of Defendants' failure to release the construction lien, Plaintiffs were denied credit with Tri City.

91. Defendants violated 15 U.S.C. § 1692f.

92. Plaintiffs seek injunctive relief requiring Defendants to release construction liens after the customer pays in full.

## **CLASS ALLEGATIONS**

93. Plaintiff also brings this action on behalf of a Class consisting of:

> (a) all natural persons in the State of Wisconsin (b) against whose real property Defendant Malm filed a construction lien with a Wisconsin circuit court, (c) and which person paid Malm or the creditor the full balance of the account or a greater amount, (d) and Malm failed to release the lien upon satisfaction of the debt, (e) during the longest period allowable by law.

94. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

95. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Defendants' conduct violated the WCA.

96. Plaintiffs' claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

97. Plaintiffs will fairly and adequately represent the interests of the Class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

98. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

99. Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and against Defendants for:

(a) declaratory relief;

(b) injunctive relief;

(c) actual damages;

(d) statutory damages;

(e) punitive damages;

(f) attorneys' fees, litigation expenses and costs of suit; and

(g) such other or further relief as the Court deems proper.

Dated: October 21, 2020

**ADEMI LLP**

By: *Electronically signed by John D. Blythin*
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com